UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DONALD E. OSWALD,

    Plaintiff,

v.                                       Case No.: 2:22-cv-247-SPC-NPM

DERRICK DIGGS and CITY OF
FORT MYERS, FLORIDA,

    Defendants.

                                           /

**OPINION AND ORDER**[1]

Before the Court are Chief Derrick Diggs' Motion to Dismiss (Doc. 41) and Donald Oswald's Response in Opposition (Doc. 43). Diggs presents five arguments for dismissing Count I of the Amended Complaint. For the reasons that follow, the Court is persuaded by two of those arguments, is unconvinced by one, and finds that two arguments need not be addressed at present. Consequently, the motion is granted on two grounds.

---

[1] Papers hyperlinked to CM/ECF may be subject to PACER fees. By using hyperlinks, the Court does not endorse, recommend, approve, or guarantee any third parties or their services or products, nor does it have any agreements with them. The Court is not responsible for a hyperlink's functionality, and a failed hyperlink does not affect this Order.

## BACKGROUND[2]

The Court recounts the factual background as pleaded in the Amended Complaint, which it must take as true to decide whether the Amended Complaint states a plausible claim. *See Chandler v. Sec'y Fla. Dep't of Transp., 695 F.3d 1194, 1198–99 (11th Cir. 2012).*

After a long and distinguished career in law enforcement, Oswald became the Inspector General of the Fort Myers, Florida Police Department ("FMPD"). In Chief Diggs' presence, Oswald witnessed Command Major Bill Newhouse directly order an officer of lower rank to withhold from the city council information about a $30 to $35 million overrun on constructing a new police headquarters until the project was too far completed to be abandoned. Oswald perceived this "order" to be an act "of gross mismanagement, waste, [and] gross neglect of duty," and he reported what he had witnessed to the mayor and the city attorney. (Doc. 9 ¶ 21–22).

Oswald prepared a written complaint for Diggs charging Newhouse with unethical conduct and violations of five FMPD policies ("Newhouse Complaint"). Because Diggs was a witness, the Newhouse Complaint included

---

[2] The Amended Complaint includes information about other allegedly stigmatizing statements. Because, as discussed below, Oswald has sufficiently pleaded that the statements that preceded his resignation attended his discharge, the background section omits the statements that followed his resignation.

Oswald's recommendation that Diggs delegate investigative authority over the Newhouse Complaint to the city attorney's office or an outside firm.

Diggs was angered by the Newhouse Complaint and by the fact that Oswald had discussed the Newhouse matter with the city attorney without first telling him. Diggs then "commenced a campaign of discrimination and retaliation against" Oswald. (Doc. 9 ¶ 27). Diggs departed from past practice by excluding Oswald from command staff meetings; opened an investigation into Oswald's alleged breaches of the standard of conduct and his divulging of internal information; and widely expressed his loss of confidence in Oswald.

Most pertinent to Count I, Diggs did not recuse himself from the internal affairs investigation into the Newhouse Complaint. And because he was a witness to Newhouse's alleged statements, Diggs testified for the investigation. In that testimony, he contradicted much of what Oswald reported, and he stated, "there are numerous inaccuracies and things that were taken out of context on the report that [Oswald] put together." (Doc. 9 ¶ 36).

When Diggs received the Report of Investigation into the Newhouse Complaint, he completed a Final Action Summary that labelled the Newhouse Complaint "Unfounded," which FMPD policy defines as: "the allegation is demonstrably false or there is no credible evidence to support it." (Doc. 9 ¶ 37). Oswald alleges this communicated that Diggs believed Oswald "was a liar or at best grossly incompetent—the Newhouse Complaint was based on false or

3

not credible evidence." (Doc. 9 ¶ 37). Oswald alleges that the "Unfounded" judgment was false and far harsher and more stigmatizing than other options[3] would have been. He also alleges that the label "reflected [Diggs'] poor estimation and lack of confidence in [Oswald]." (Doc. 9 ¶ 38). And because the Report of Investigation and the Final Action Summary forms are public records, they are readily available for review by the public.

Shortly thereafter, the FMPD had a very eventful day. First, Newhouse was informed that Diggs had dismissed the Newhouse Complaint. Second, Newhouse filed a counter-complaint against Oswald alleging that Oswald had contacted the city attorney without seeking or obtaining Diggs' approval, that Oswald's filing of the Newhouse Complaint constituted conduct unbecoming an officer, and that Oswald violated Florida law by telling people outside the FMPD about the Newhouse Complaint. Third, Diggs opened an internal affairs investigation into the counter-complaint. And finally, Diggs sent Oswald a memorandum outlining the events of the day and requesting Oswald provide any additional information and the names of any witnesses to the

---

[3] FMPD policy offered Diggs two alternative dispositions for the Report of Investigation that would have cleared Newhouse of the Newhouse Complaint's allegations:
- "Exonerated": the facts, after a completed investigation, "suggest that the alleged incident did occur, but that the employee's actions were lawful, proper, and consistent with department policy"; and
- "Not Sustained": "the facts presented are insufficient to prove the allegation by a preponderance of the evidence."

(Doc. 9 ¶ 38).

4

investigator who would be handling the counter-complaint against him. Oswald alleges these events were coordinated, and not coincidental.

A little more than a week later, Oswald resigned. In his letter of resignation, he stated he was "left with no other option" because he had "endured overt retaliation and [was] now being forced out of [his] position." (Doc. 9 ¶45–46). Oswald alleges these circumstances existed at the time of his resignation and would have convinced a reasonable person in Oswald's position to resign:

- Diggs "effectively excommunicated [Oswald] from the FMPD command staff";

- Oswald's requests that Diggs and another investigator be recused from handling the Newhouse Complaint were repeatedly ignored;

- Diggs ordered Oswald not to report his continuing ethics concerns to city leadership;

- Diggs was both a witness in the Newhouse Complaint and its adjudicator;

- Diggs dismissed the Newhouse Complaint as "Unfounded" and being unsupported by credible evidence;

- Diggs implicitly communicated his loss of confidence in Oswald; and

- Given the nature of Oswald's job as Inspector General, Diggs' loss of confidence effectively meant the end of Oswald's career.

(Doc. 9 ¶ 47).

Before he left the FMPD, Oswald submitted a written request for the opportunity "to review [the counter-complaint against him], all witness statements, including all other existing subject officer statements, and all other existing evidence . . . relating to the incident under investigation in order that [he could] provide a voluntary statement." (Doc. 9 ¶ 56). FMPD did not honor Oswald's requests but, instead, asked Oswald to provide "a Name Clearing Letter for inclusion in the investigative case file." (Doc. 9 ¶ 57). Oswald did not file a Name Clearing Letter.

Oswald has now sued the City of Fort Myers and Diggs, alleging violation of 42 U.S.C. § 1983 (Count I) and Violation of the Florida Public Employee Whistle-blower's Act, Fla. Stat. §§ 112.3187–3195 (Count IV). Diggs moves the Court to dismiss Count I against him.

## LEGAL STANDARD

Together, Federal Rules of Civil Procedure 8 and 10 establish the minimum pleading requirements. A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). And each "party must state its claims or defenses in numbered

6

paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b).

A defendant can attack a complaint for failing to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A party must plead more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

In considering a motion to dismiss, a court must accept all factual allegations in a complaint as true and take them in the light most favorable to the plaintiff. *See Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008) (citation omitted). But acceptance of a complaint's allegations is limited to well-pleaded allegations. *See La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (citations omitted).

## DISCUSSION

Oswald appears to bring Count I's due process allegations against Diggs in both his individual and official capacities. (Doc. 9 at 28–29). As Diggs points out, Oswald's pleadings tactic is problematic because he also brings Count I against the City of Fort Myers, which renders the official capacity allegations duplicative. (Doc. 41 at 2 n.2). Indeed, "when an officer is sued under Section

1983 in his or her official capacity, the suit is simply another way of pleading an action against an entity of which an officer is an agent." *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) (citations and internal quotation marks omitted). And it would be "redundant and possibly confusing to the jury" to keep both the entity and the officer sued in his official capacity as defendants. *Id.* So to avoid redundancy and confusion, Count I is dismissed against Diggs in his official capacity. This leaves Count I against Diggs in his individual capacity (and against the City of Fort Myers). The discussion that follows thus pertains to Count I's allegations against Diggs in his individual capacity.

The Fourteenth Amendment to the United States Constitution provides that "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. "When reputational damage is sustained in connection with a termination of employment, it may give rise to a procedural due process claim for deprivation of liberty which is actionable under section 1983." *Cotton v. Jackson*, 216 F.3d 1328, 1330 (11th Cir. 2000) (per curiam) (citation omitted). There are three elements for a § 1983 procedural due process claim: (1) "a deprivation of a constitutionally-protected liberty or property interest"; (2) "state action"; and (3) "a 'constitutionally inadequate process.'" *Foxy Lady, Inc. v. City of Atlanta, Ga.*, 347 F.3d 1232,

8

1236 (11th Cir. 2003) (per curiam) (quoting *Cryder v. Oxendine*, 24 F.3d 175, 177 (11th Cir. 1994)).

To establish a deprivation of procedural due process, a plaintiff must show: (1) a false statement, (2) of a stigmatizing nature, (3) attending a governmental employee's discharge, (4) was made public, (5) by the governmental employer, (6) without a meaningful opportunity for the employee to have a name-clearing hearing. *Cotton*, 216 F.3d at 1330 (citations omitted).

Diggs argues five deficiencies require dismissal of Count I. Not so, says Oswald. The Court will address each argument.[4]

### 1. Does Florida law afford Oswald an adequate remedy?

Diggs argues that Oswald could have pursued mandamus relief to compel a name-clearing hearing and that Count I should be dismissed because Oswald fails to allege that he sought due process relief and was denied it. For his part, Oswald disputes the availability of mandamus relief and questions whether—were mandamus relief available—it would be adequate for § 1983 purposes.[5]

---

[4] With one exception. Because the Court dismisses Count I on other substantive grounds, it will not address whether Diggs is entitled to qualified immunity. *See Faucher v. Rodziewicz*, 891 F.2d 864, 871 (11th Cir. 1990).

[5] As an aside, Oswald relies on the Eleventh Circuit's conclusion in *Johnston v. Borders* ("*Johnston I*")—an opinion about deprivation of procedural due process vis-à-vis denial of a name-clearing hearing—that mandamus was unavailable to the plaintiff because it would be inadequate to clear the plaintiff's name. 724 F. App'x 762, 768 (11th Cir. 2018) (per curiam). But in a subsequent opinion in the same case ("*Johnston II*"), the court clarified that its earlier conclusion was based on the parties' briefing, specifically that

9

"[A] procedural due process violation is not complete 'unless and until the State fails to provide due process.'" *McKinney v. Pate,* 20 F.3d 1550, 1557 (11th Cir. 1994) (en banc) (citation omitted). "In other words, the state may cure a procedural deprivation by providing a later procedural remedy; only when the state refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation actionable under section 1983 arise." *Id.* If adequate state processes are available, a federal court lacks subject matter jurisdiction to entertain a procedural due process claim. *Cotton,* 216 F.3d at 1330–31.

When the protected liberty interest at issue is the plaintiff's interest in his reputation, the process needed to protect that liberty interest is a name-clearing hearing. *See Harrison v. Wille,* 132 F.3d 679, 683 n.9 (11th Cir. 1998) (citations omitted). That name-clearing hearing can be held either before or after the termination or publication. *Cotton,* 216 F.3d at 1330 (citation omitted). The "inquiry concerns whether adequate procedures were available to [the plaintiff] to protect his right not to be deprived of his liberty interest in his reputation by state action without the opportunity for a name-clearing

---

the defendant's brief contended that mandamus relief would be insufficient to remedy the plaintiff's claimed *lack of notice*. *Johnston v. Borders,* 36 F.4th 1254, 1266 (11th Cir. 2022). *Johnston II* characterized *Johnston I*'s conclusion as "dubious" and emphasized it was "non-precedential." *Id.* at 1266 n.18. The Court is not persuaded that mandamus relief would be inadequate here based solely on the non-binding statement in *Johnston I* to the contrary.

hearing." *Id.* at 1331. And if such procedures exist, and the plaintiff failed to use them, then he cannot maintain his due process claim. *Id.*

Oswald alleges he requested by letter an opportunity to review the evidence in the investigation of the counter-complaint against him, but the FMPD did not provide that evidence. Oswald alleges that he received an email that referenced his written request and asked him to provide a name-clearing letter to include in the investigative file. He states, "[t]he request was not a meaningful name clearing opportunity and, in any event, was never completed." (Doc. 9 ¶ 57). Oswald responded to the email with a request for clarification: "a name clearing letter is customarily offered by an accused officer after an investigation is closed . . . . I am not clear about whether the investigation has concluded. Is [the matter] currently an [open] or closed [Internal Affairs] investigation." (Doc. 9 ¶ 57). He alleges he received no reply, and "no such [name-clearing] letter was filed." (Doc. 9 ¶ 57). In support of Count I, Oswald alleges he "was not afforded a meaningful opportunity to clear his name." (Doc. 9 at 29).

Based on Oswald's allegations, he did not receive the caliber of name-clearing that he sought. But it is also clear that he neither pressed for the hearing he wanted, nor did he memorialize his side of the story when the FMPD asked him to provide a name-clearing letter.

But perhaps more damning is what Oswald has failed to allege: that there were no adequate state remedies to cure the failure to provide a name-clearing hearing. This failure dooms his claim. *See Ladd v. City of W. Palm Beach*, 681 F. App'x 814, 818–19 (11th Cir. 2017) (per curiam); *McKinney*, 20 F.3d 1563 n.18. Even if Oswald suffered a procedural deprivation at Diggs' hands, "he has not suffered a violation of his procedural due process rights unless and until the State of Florida refuses to make available a means to remedy the deprivation." *See McKinney*, 20 F.3d at 1563. Count I must be dismissed.

**2. Did Oswald elect to resign his position voluntarily?**

Diggs also argues the allegations in the Amended Complaint illustrate that Oswald voluntarily resigned, so due process requirements were not implicated. Diggs says Oswald's resignation did not result from deception or a misrepresentation of material fact, nor was Oswald coerced or placed under duress to resign. Instead, Diggs contends the allegations show Oswald had other alternatives but still resigned.

Oswald disagrees with Diggs' characterization of his allegations, and he maintains this is a fact-intensive inquiry that cannot and should not be resolved in a motion to dismiss. Oswald also contends Diggs fails to address an alternate test for characterizing a resignation as involuntary, and under that analysis, the argument goes, Oswald was constructively discharged.

12

Due Process is not implicated if an employee resigned voluntarily. *Hargray v. City of Hallandale,* 57 F.3d 1560, 1568 (11th Cir. 1995) (per curiam). And the law generally presumes that resignations are voluntary and the exercise of free choice. *Id.* In two cases an employee's resignation will be considered involuntary, and thus a deprivation of due process: (1) where the employer forces the resignation by coercion or duress, or (2) where the employer obtains the resignation by deceiving or misrepresenting a material fact to the employee. *Id.*

Oswald urges the Court to apply another analysis: Were working conditions so intolerable that a reasonable person in Oswald's position would feel compelled to resign? But that standard applies in discrimination cases. Oswald has not cited, and Court has not found, a case in which the Eleventh Circuit has applied that analysis to an alleged due process violation. In fact, the Eleventh Circuit has recently reaffirmed *Hargray*'s application to due process cases and rejected its application to Title VII cases. *See Davis v. Legal Services Alabama, Inc.*, 19 F.4th 1261, 1268 (11th Cir. 2021) (per curiam) ("We do not agree that *Hargray* is instructive in [analyzing a Title VII constructive discharge claim]. Rather, *Hargray* is about whether a resignation from public employment that had been requested by the employer was sufficiently involuntary to trigger the protections of the Due Process Clause.").

Oswald relies only on the inapplicable "intolerable working conditions" standard, and he offers no response to Diggs' argument that his resignation was voluntary under the Eleventh Circuit's "coercion, duress, deception, or misrepresentation" standard.

An employee's perception that resignation is his only option is irrelevant. *Rademakers v. Scott,* 350 F. App'x 408, 412 (11th Cir. 2009) (per curiam). "Similarly, the mere fact that the choice is between comparably unpleasant alternatives—*e.g.*, resignation or facing disciplinary charges—does not of itself establish that a resignation was induced by duress or coercion, hence was involuntary." *Id.* (quoting *Stone v. Univ. of Md. Med. Sys. Corp.,* 855 F.2d 167, 174 (4th Cir.1988)).

Because the Amended Complaint does not allege that Oswald's resignation stemmed from deceit, material misrepresentation, coercion, or duress, his termination was voluntary.[6] Under the allegations of his Amended Complaint, Oswald's resignation was not caused by state action and cannot

---

[6] "The question of whether coercion or misrepresentation is present is a legal one." *Hargray,* 57 F.3d at 1567 n.6 (citing *Reich v. Dep't of Conservation and Natural Res.,* 28 F.3d 1076, 1082 (11th Cir. 1994)). The Court is to conduct an objective inquiry in both cases; it asks whether the resignation was objectively a product of free will—not whether the employee perceived that resignation was his only option or whether the employer intended to mislead the employee. *Hargray,* 57 F.3d at 1568, 1570. But the facts must be established before addressing the question of law. *Poindexter v. Dep't of Hum. Res.,* 946 F. Supp. 2d 1278, 1286 (M.D. Ala. 2013). And yet, Oswald has made no allegations that speak to either analysis. Because the amended complaint lacks allegations that Oswald's resignation stemmed from coercion, duress, deception, or misrepresentation, it simply fails to state a claim under the applicable standard.

14

sustain a claim of deprivation of due process under the Fourteenth Amendment. Count I must be dismissed for this reason, too.

### 3. Were Diggs' allegedly false and stigmatizing statements attendant to Oswald's discharge?

Diggs argues the Amended Complaint does not state a plausible § 1983 claim because his allegedly stigmatizing statements were not made along with his decisions about Oswald's employment. Oswald responds that Diggs misapplies the six-part test to establish a deprivation of procedural due procedure. He says the issue is not whether Diggs' statements were made along with *Diggs' decisions about* Oswald's employment; instead, the Court considers whether the statements attended Oswald's discharge.

The Court agrees with Oswald and rejects Digg's position because his application of the stigma-plus analysis is too restrictive. Because the public could perceive that Diggs' statements were connected to or occurred during what Oswald alleges to be a constructive discharge, the allegations sufficiently plead that Diggs' statements attended Oswald's discharge. *Cannon v. City of W. Palm Beach*, 250 F.3d 1299, 1302 n.1 (11th Cir. 2001) (citing *Owen v. City of Indep.*, 445 U.S. 622, 633 n.13 (1980)); *Ray v. Tennessee Valley Auth.*, 677 F.2d 818, 824 (11th Cir. 1982). Dismissal is not appropriate on this ground.

15

### 4. Does Oswald seek available relief for the alleged deprivation of his liberty interest?

Oswald seeks reinstatement, compensatory damages, special damages, and punitive damages. Diggs argues Oswald has not alleged that those damages flowed from the alleged harm—denial of an opportunity for a name-clearing hearing. And because Oswald fails to seek relief that would compel a name-clearing hearing, Diggs argues his § 1983 claim must be dismissed.

But Oswald contends the Amended Complaint "most certainly pleads and requests equitable relief—Inspector General Oswald seeks a meaningful opportunity to clear his name via a name clearing hearing." (Doc. 43 at 15). He notes that the Amended Complaint requests injunctive relief (reinstatement) and "such further relief as the Court deems just and proper" (Doc. 9 at 34), and he disputes Diggs' argument that monetary relief is unavailable.

The Court need not determine whether money damages are available at this point.[7] But the Court is persuaded that Oswald has failed to seek relief

---

[7] The Court assumes that the parties' dispute over this issue is substantially borne of dueling concurring opinions that accompany *Johnston II*, which was published only weeks ago. The majority opinion addressed the availability of damages only in dicta. *See Johnston II*, 36 F.4th at 1264 n.13, 1269 n.25. But in a special concurrence, Judge Tjoflat opined at length that under the Due Process Clause, a name-clearing hearing—and not money damages—was the available remedy. *Id.* at 1290–93. Judge Jordan disagreed and wrote to express his opinion that "[a]s a number of courts have held, nominal and compensatory damages may be available to a discharged employee if granting a name-clearing hearing many years after the fact would not 'reverse any ill effects' from the denial or inadequacy of a hearing," but "[g]iven the way [that] case was litigated, [the

that would compel a name-clearing hearing. Despite Oswald's contention otherwise (Doc. 43 at 15), the Amended Complaint does not explicitly request injunctive relief compelling a name-clearing hearing. Should Oswald amend, he should remedy this oversight.

## VOLUNTARY DISMISSALS

One housekeeping matter warrants attention. This case started as a four-count complaint against the City of Fort Myers and Diggs, as well as against the FMPD, Lesa Breneman, and William Newhouse. (Doc. 1; Doc. 9). Oswald has since narrowed the scope of litigation. He has voluntarily dismissed (1) the FMPD as a defendant; and (2) Counts II and III, which eliminated Breneman and Newhouse from this action. (Doc. 32). The Court has addressed that dismissal. (Doc. 33)

But it has not yet addressed Oswald's Second Notice of Voluntary Dismissal. (Doc. 39). It does so now. Oswald has dismissed Count IV against Diggs "in his individual capacity only" but still proceeds against him "in his official capacity and defendant City of Fort Myers." (Doc. 39 at 1). A problem for Oswald, however, is proceeding against Diggs in his official capacity is likely duplicative of proceeding against the City of Fort Myers. *See, e.g.*, *Busby,*

---

Eleventh Circuit had] no occasion to opine on the availability of compensatory damages." *Id.* at 1289 (citations omitted).

931 F.2d at 776 ("To keep both the City [of Orlando] and the officers sued in their official capacity as defendants in this case would have been redundant and possibly confusing to the jury."). Because neither party has addressed the duplicative nature of Count IV after the Second Notice of Voluntary Dismissal, the Court mentions this matter only for Oswald to consider when filing a second amended complaint.

## CONCLUSION

The Court grants the motion to dismiss (Doc. 41) and dismisses Count I against Chief Derrick Diggs without prejudice. Should Oswald choose to amend, that second amended complaint must remedy Count I's deficiencies and reflect the housekeeping matters concerning Oswald's earlier changes to claims and parties. Doing so will allow the parties and the Court to rely on an operative pleading that accurately reflects the state of play.

Accordingly, it is now

**ORDERED:**

Defendant Diggs' Motion to Dismiss (Doc. 41) is **GRANTED** to the extent that **Count I is dismissed without prejudice as to Diggs in his individual and official capacities**. Oswald may file a second amended complaint on or before **September 15, 2022**.

**DONE** and **ORDERED** in Fort Myers, Florida on September 1, 2022.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record

Case 2:22-cv-00247-SPC-NPM   Document 44   Filed 09/01/22   Page 19 of 19 PageID 272